

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

RALD C. MANN
TORNEY GENERAL

Honorable John E. Taylor, Chief Supervisor
Oil & Gas Division
Railroad Commission of Texas
Austin, Texas

Dear Sir:
Opinion No. O-2581
Re: Whether the Railroad Commission of Texas has the authority to grant back allowable to an operator who has been prevented from producing his allowable

We have your letter of July 31, 1940, in which you make a detailed statement of facts, and ask our opinion thereon, as follows:

"On September 24, 1934, the Railroad Commission issued its Rule 37 permit order authorizing Joe Edgar to drill and operate well No. 3 on his Todd-Stinchcomb 3.99 acre tract, Gregg County, Texas, as an exception under the provisions of Rule 37. Suit was filed by Stanolind Oil & Gas Company and Magnolia Petroleum Company against Edgar and the Commission attacking the validity of such permit order. The District Court, upon final hearing, adjudged said permit order to be unreasonable and invalid and enjoined production from said well No. 3. Upon appeal, the District Court judgment was affirmed by the Court of Civil Appeals. (Edgar vs. Stanolind Oil & Gas Company, et al, 90 S. W. (2d) 656). The appellate opinion recited that:

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

Honorable John B. Taylor, page 2

"1. The Commission did not have juris-
diction to issue such Rule 37 permit order;

"2. The Edgar lease in question con-
stituted a 'voluntary subdivision in viola-
tion of Rule 37';

"3. The Edgar lease already had reason-
able development and an equal opportunity
with that of adjoining leaseholders to recover
the oil beneath such tract.

"On September 11, 1936, after new appli-
cation, proper notices, and hearings, the Com-
mission again granted Edgar a Rule 37 permit
order authorizing production of such well No. 3,
the well having previously been drilled under
authority of the permit order dated September
24, 1934. An original proceeding was filed
by Stanolind and Magnolia in the Court of Civil
Appeals seeking writs of prohibition, injunc-
tion, and other relief to restrain Edgar from
operating said well and to prohibit the Commis-
sion from permitting the production of said
well and from issuing tenders for any oil pro-
duced therefrom. The Court of Civil Appeals
denied this relief (Stanolind vs. Edgar, 98
S. W. (2d) 222) upon the ground that an adequate
legal remedy existed; but the Court announced
that:

"1. Each basis of its prior judgment ad-
judging the invalidity of the Septem-
ber 24, 1934, permit order was effec-
tive and controlling of the last per-
mit order;

"2. The Commission's order and any tenders
issued thereunder are void, being in
violation of the judgment of such
Court in cause No. 8292, consequently
any further restraining or prohibitory
orders would be supererogatory.

Honorable John E. Taylor, page 3

"Edgar applied to the Supreme Court for
a writ of error, but the Supreme Court denied
the application for lack of jurisdiction on
January 6, 1937. Edgar's motion for rehearing
was overruled by the Supreme Court. Edgar was
thereupon compelled to close in his well and
cease production therefrom.

"Meanwhile, Stanolind and Magnolia had
filed an original proceeding in the Court of
Civil Appeals to enforce the judgments of that
Court in causes No. 8292 (90 S. W. (2d) 656)
and No. 8580 (98 S. W. (2d) 222), and to pro-
hibit and enjoin Edgar from producing oil
from said well No. 3, to plug it, and to hold
Edgar in contempt of court for violating such
judgments. The Court of Civil Appeals denied
all of the relief sought by relators. (Stanolind
vs. Edgar, 107 S. W. (2d) 631.) Edgar then
again commenced operation of said well under
authority of the Commission's permit order
dated September 11, 1936.

"Thereafter, Stanolind and Magnolia filed
suit against Edgar and the Commission in the
District Court of Travis County, attacking said
order of September 11, 1936. On May 27, 1939,
final judgment was rendered by the District
Court sustaining and upholding the validity of
said order, the Court in its judgment likewise
adjudging that 'all past and future production
of oil from said well is in all respects lawful.'
No appeal or writ of error from said judgment
was perfected.

"By reason of the foregoing facts and pro-
ceedings, Edgar was prohibited and prevented
from operating said well No. 3 for a period of
103 days from January 22, 1937, to May 6, 1937.
During said period the allowable production ac-
corded to said well by the proration schedule
and order of the Commission was 25 barrels per
day, aggregating a total of 2,575 barrels, for
such period which Edgar was, as I understand the
facts, ready, willing and able to produce, but

Honorable John K. Taylor, page 4

as hereinabove pointed out, was prevented from producing same by virtue of the proceedings hereinabove set forth.

"Edger now seeks authority from the Commission to produce this oil in such daily quantities and amounts above the current allowable production assigned to said well by the proration schedules of the Commission in any manner that the Commission may authorize.

"Under the facts hereinabove set forth will you please advise whether or not the production of the amount of oil hereinabove mentioned may be permitted by the Commission?"

From the facts as stated in your letter, it appears that the final decision of the court was that the well in question was legal, and that the permittee should have been allowed to produce the allowable which was assigned to this well under the proration schedules of the Railroad Commission of Texas for the East Texas field. The question, therefore, resolves itself into a determination of whether the Railroad Commission has the authority to adjust the allowable from this well in the present and future allowable schedules for the East Texas field so as to grant Edgar "back allowable"; in other words, to permit Edgar to increase his production from this well so as to make up for the amount of allowable production which he lost during the time when his well was closed down.

Generally speaking, the authority of the Railroad Commission to promulgate rules relating to the production of oil and gas depends upon the right of the State of Texas and its agencies to prevent the physical waste of oil and gas, either underground or overground, which results either from inefficient methods of production or production in excess of market demand. See Articles 6014, 6023, 6029, 6042 and 6049c, Vernon's Annotated Texas Civil Statutes. The Railroad Commission is specifically given authority to limit the production of oil, where it finds that "waste is taking place, or is reasonably imminent," under the provisions of Section 7 of Article 6049c.

Honorable John E. Taylor, page 5

The limitation of the production from an oil field necessarily carries with it the problem of dividing the allowable production among the various producers in the field. The statutes of Texas provide no specific formula for the distribution of the allowable production, but merely provide in general terms that, "the Commission shall distribute, prorate, or otherwise apportion or allocate the allowable production among the various producers on a reasonable basis." Article 6049c, Section 7.

While there have been no reported court decisions on the subject, the question of the authority of the Railroad Commission to permit an operator to produce "back allowable" has been previously passed upon in opinions of this department. In a letter opinion dated May 27, 1935, to Senator Arthur P. Duggan, by Hon. Scott Gaines, First Assistant Attorney General, it was stated that the Railroad Commission does not have authority to permit an operator to produce "back allowable." The same conclusion was reached in an opinion by Assistant Attorney General W. J. (Dick) Holt, addressed to the Railroad Commission of Texas, dated November 20, 1935. Copies of these opinions are attached hereto.

The Railroad Commission has acted upon the construction of its powers by the Attorney General's Department, and has consistently taken the position that it does not have the authority to permit an operator to make up by present production his failure to produce his allowable in the past. It is a matter of general knowledge that at the time the opinions of this department were written in 1935, various persons were asserting the right to produce large quantities of oil as "back allowable," and the consistent departmental construction of the Railroad Commission's authority by this department and by the Railroad Commission has directly affected important property rights.

In the face of this departmental construction, the Legislature has not seen fit to amend the conservation statutes so as to confer on the Railroad Commission

Honorable John T. Taylor, page 6

the authority to grant "back allowable." Section 7 of what is now Article 6049c, Vernon's Annotated Civil Statutes, was amended by Chapter 76, Acts 44th Legislature, Regular Session, Section 6, effective April 13, 1935, and then contained the same provisions as to the powers of the Railroad Commission to prorate the production of oil as hereinbefore quoted. Under Section 20 of this act, its provisions terminated September 1, 1937. By Chapter 15, Acts 1937, 45th Legislature, Regular Session, Section 1, the effective term of this act was extended to September 1, 1939, and by House Bill 851, Acts 46th Legislature, Regular Session, Section 1, the effective term of the act was again extended, to September 1, 1941. Both of these extensions were without any amendment to the statutory provisions relating to the proration powers of the Railroad Commission.

Where statutory provisions are general in their terms, the departmental construction placed upon the statute, if reasonable, will be followed by the courts. This is particularly true where the construction directly affects important property rights. In following the departmental construction by the Railroad Commission of the conservation statutes in another connection, the Supreme Court said in the case of Magnolia Petroleum Company vs. New Process Production Co., 129 Tex. 617, 625, 104 S. W. (2d) 1106:

"An examination of our conservation statutes discloses that they do not in any manner directly deal with such question, but are open to construction in regard thereto. Under such a record we think in this instance we should sustain the departmental ruling. Neubert v. Chicago, etc., Ry. Co., 116 Texas 644, 296 S. W. 1090; Moorman v. Terrell, Comptroller, 109 Texas 173, 202 S. W. 727; Tolleson v. Rogan, Land Commissioner, 96 Texas 424, 73 S. W. 520."

Honorable John E. Taylor, page 7

There is additional reason for adopting the departmental construction where, subsequent to the departmental construction, the Legislature has re-enacted or extended the statute without change, the presumption being that the Legislature knew of the departmental construction and was satisfied with it. Federal Crude Oil Co. vs. Yount-Lee Oil Co., 122 Tex. 21, 52 S. W. (2d) 56; Stephens County vs. Hefner, 118 Tex. 397, 16 S. W. (2d) 804; Railroad Commission of Texas vs. T. & N. O. R. Co., 42 S. W. (2d) 1091 (error refused).

We are of the opinion that this department should adhere to the construction heretofore consistently followed by this department and the Railroad Commission, and we therefore are of the opinion that the Railroad Commission does not have authority to permit Edgar to produce the "back allowable" which he was prevented from producing under the facts stated in your letter.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By James P. Hart

James P. Hart
Assistant

JPH:LW

APPROVED OCT 3, 1940

ATTORNEY GENERAL OF TEXAS



APPROVED
OPINION
COMMITTEE
BY [signature]
CHAIRMAN